Felicia Medina (SBN 255804)
fmedina@medinaorthwein.com
Jennifer Orthwein (SBN 255196)
jorthwein@medinaorthwein.com
Kevin Love Hubbard (SBN 290759)
khubbard@medinaorthwein.com
MEDINA ORTHWEIN LLP
230 Grand Avenue, Suite 201
Oakland, CA 94610
Telephone: (510) 823-2040
Facsimile: (510) 217-3580

*Attorneys for Plaintiff Jason Harmon*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON HARMON,<br><br>**Plaintiff,**<br><br>v.<br><br>LEWANDOWSKI, VAUGHN, BRIDGEPORT, PEREZ, GAFFNEY, RIO, ROSALES, AND DOES 1-5.<br><br>**Defendants.** | **COMPLAINT FOR DAMAGES** |

# I.     INTRODUCTION

1. Five days before Jason Harmon's cellmate, Hemmingway, violently sexually assaulted Mx. Harmon,[1] Mr. Hemmingway handed Defendant Vaughn a note. It read: "I was single cell for 7 years when I was here. You took all my meds and my single cell. **Now you got this bitch in my cell whose turning into a girl. Put me by myself or I'm gonna fuck him [sic] with his [sic] cane**." Rather than act to protect Mx. Harmon, Defendant Vaughn laughed when he read the note and told Mr. Hemmingway to go back to his cell and "handle it." Mr. Hemmingway then carried out the explicit threat he made in the note.

2. Between Mr. Hemmingway's first notice of his intent to harm Mx. Harmon and his attack on Mx. Harmon five days later, Defendants were provided ample additional warning of the grave threat Mx. Harmon faced. Those warnings included yet another note from Mr. Hemmingway detailing his threats, handed to Defendant Bridgeport, emergency requests for transfer from Mx. Harmon, and intervention by Mx. Harmon's treating psychologist. Defendants again and again callously refused to respond to the threats against Mx. Harmon and instead laughed and made clear to Mx. Harmon's attacker that they would not stand in his way. Indeed, Defendants went so far as to encourage Mr. Hemmingway by telling him that he "knew what to do" in response to Mx. Harmon "snitching" on him and causing problems. Despite the unequivocal notice of the serious danger Mx. Harmon faced, Defendants refused to act to protect Mx. Harmon.

3. Mx. Harmon's suffering only continued after the assault. Upon their transfer to the Administrative Segregation Unit, they were stripped in front of their attacker and then placed in a holding cage next to him while officers encouraged further abuse against them. When Mx. Harmon filed a formal PREA complaint they were retaliated against by CDCR officials, their complaint was not kept confidential, their concerns regarding their housing placements were ignored, their rights to an advocate and thorough investigation disregarded, and their investigation closed before their DNA results were

---

[1] Mx. is the gender-neutral honorific used by individuals, like Plaintiff, who identify as gender non-binary, a term used to refer to individuals who do not identify within the gender binary as either a "man" or a "woman." Plaintiff will be referred to as Mx. Harmon throughout this complaint, with the pronouns they/them in place of he/she.

analyzed.[2]

4.  As a result, Mx. Harmon severely decompensated and has since attempted suicide on nine separate occasions. Although Defendants were aware that Mx. Harmon attempted suicide by overdosing on Tylenol, CDCR medical officials continued to prescribe them the drug to be administered without proper precautions while Mx. Harmon was suffering from active suicidal ideation and Post Traumatic Stress Disorder. These continued prescriptions enabled Mx. Harmon to collect large amounts of Tylenol and attempt suicide again and again over a two-year period. The repeated suicide attempts have resulted in long-term physical damage as well as emotional and psychological trauma.

5.  On June 27, 2019, Mx. Harmon received notice from the Los Angeles County District Attorney that the results of the DNA evidence gathered from their assault substantiated their claims. Mx. Harmon was then forced to notify CSP-LAC of the updated findings and request for the results to be changed to substantiated. The results were updated on October 11, 2019, one year and eight months after they reported the rape, during which time CDCR officials refused to believe or seriously investigate their claims. Mx. Harmon, like other survivors of sexual assault, suffered immensely from CDCR officials' refusal to believe them and properly investigate their claims.

6.  Following his attack and subsequent placement next to Mx. Harmon, Mr. Hemmingway placed a five-hundred-dollar bounty on Mx. Harmon for reporting the PREA allegations. This threat has followed Mx. Harmon even after they transferred, placing Mx. Harmon in continuing danger and resulting in their current placement in isolation for their own safety.

7.  Plaintiff is suing to seek accountability for CDCR officials' wanton and reckless conduct that has resulted in life-long harm. Plaintiff brings this action under 42 U.S.C. Section 1983 for violations of the First and Eighth Amendments of the Constitution of the United States.

## II.     THE PARTIES

8.  **Plaintiff Jason Harmon** is a resident of California, currently housed at the California

---

[2] CSP-LAC's 2017 PREA audit demonstrated widespread deficiencies in its implementation of proper procedures for providing advocates for victims who made PREA complaints and in initial screening procedures to determine a person's own perception of safety. *Available at* https://www.cdcr.ca.gov/wp-content/uploads/sites/186/2019/06/lac-2017-prea-report.pdf?label=California%20State%20Prison%20%E2%80%93%20Los%20Angeles%20County,%202017&from=https://www.cdcr.ca.gov/prea/prea/reports-audits/.

Heath Care Facility in Stockton, California. Mx. Harmon has been incarcerated under the custody of the CDCR since February 1, 2011 and their CDCR number is AG2873. Mx. Harmon was housed at California State Prison, Los Angeles County ("CSP-LAC") from January 18, 2018 to March 30, 2018, and at the time of assault. They were subsequently housed at the California Men's Colony, the California Medical Facility, the California Substance Abuse Treatment Facility, California State Prison, Sacramento, California State Prison, Corcoran, and then moved to the California Health Care Facility, Stockton.

9. **Defendant Theresa Lewandowski** is or was Associate Warden of California State Prison Los Angeles County. Upon information and belief, Defendant Lewandowski is a resident of California. As Associate Warden, Defendant Lewandowski has a major role in the administration at California State Prison Los Angeles County, including exercising control and supervision of various aspects of the institution's functions, such as programs, custody, and committee meetings. Defendant Lewandowski is sued here in her individual capacity for damages based on actions, inaction, or conduct taken or performed under the color of state law.

10. **Defendant Bridgeport** is or was a correctional officer at California State Prison, Los Angeles County. Upon information and belief, Defendant Bridgeport is a resident of California. As a correctional officer, Defendant Bridgeport is responsible for escorting people in custody, standing guard, ensuring the safety and security of people in custody, responding to complaints, reporting irregular or suspicious occurrences and taking or recommending appropriate action, running to the scene of a disturbance or emergency, and disarming, subduing and/or restraining individuals in custody. As a correctional officer, Defendant Bridgeport has the authority to move people in custody from unsafe housing situations. Defendant Bridgeport is sued here in her individual capacity for damages based on actions, inaction, or conduct taken or performed under the color of state law.

11. **Defendant Vaughn** is or was a correctional officer at California State Prison, Los Angeles County. Upon information and belief, Defendant Vaughn is a resident of California. As a correctional officer, Defendant Vaughn is responsible for escorting people in custody, standing guard, ensuring the safety and security of people in custody, responding to complaints, reporting irregular or suspicious occurrences and taking or recommending appropriate action, running to the scene of a disturbance or emergency, and disarming, subduing and/or restraining individuals in custody. As a correctional officer,

Defendant Vaughn has the authority to move people in custody from unsafe housing situations. Defendant Vaughn is sued here in his individual capacity for damages based on actions, inaction, or conduct taken or performed under the color of state law.

12. **Defendant Perez** is or was a Sergeant at California State Prison, Los Angeles County. Upon information and belief, Defendant Perez is a resident of California. As a Sergeant, Defendant Perez is responsible for supervising Correctional Officers, ensuring the safety and security of people in custody, ensuring staff meet mandated training requirements, providing supervision/direction during an incident or emergency, escalating people in custody's complaints to higher-ranked employees, reporting irregular or suspicious occurrences, and taking or recommending appropriate action. Defendant Perez is required to follow protocol for victims of sexual assault, including keeping victims' information confidential. Defendant Perez is sued here in his individual capacity for damages based on actions, inaction, or conduct taken or performed under the color of state law.

13. **Defendant Gaffney** is or was a Lieutenant at California State Prison, Los Angeles County. Upon information and belief, Defendant Gaffney is a resident of California. As a Lieutenant, Defendant Gaffney is responsible for supervising Sergeants, preparing procedures and post orders, ensuring the safety and security of people in custody, and supervising the housing, custody, and discipline of people in custody. Defendant Gaffney is required to follow protocol for victims of sexual assault, including keeping victims' information confidential. Defendant Gaffney is sued here in his individual capacity for damages based on actions, inaction, or conduct taken or performed under the color of state law.

14. **Defendant Rio** is or was a Sergeant at California State Prison, Los Angeles County. Upon information and belief, Defendant Rio is a resident of California. As a Sergeant, Defendant Rio is responsible for supervising Correctional Officers, ensuring the safety and security of people in custody, ensuring staff meet mandated training requirements, providing supervision/direction during an incident or emergency, escalating people in custody's complaints to higher-ranked employees, reporting irregular or suspicious occurrences, and taking or recommending appropriate action. Defendant Rio is required to follow protocol for victims of sexual assault, including keeping victims' information confidential. Defendant Rio is sued here in his individual capacity for damages based on actions, inaction, or conduct taken or performed under the color of state law.

15. **Defendant Rosales** is or was Sergeant at California State Prison, Los Angeles County. Upon information and belief, Defendant Rosales is a resident of California. As a Sergeant, Defendant Rosales is responsible for supervising Correctional Officers, ensuring the safety and security of people in custody, ensuring staff meet mandated training requirements, ensuring people in custody have access to timely and necessary medical and mental health care, providing supervision/direction during an incident or emergency, escalating people in custody's complaints to higher-ranked employees, reporting irregular or suspicious occurrences, and taking or recommending appropriate action. Defendant Rosales is required to follow protocol for victims of sexual assault, including keeping victims' information confidential. Defendant Rosales is sued here in his individual capacity for damages based on actions, inaction, or conduct taken or performed under the color of state law.

16. **Defendants Does 1-5** are sued under aliases because their identities are unknown to Plaintiff. Upon information and belief, Defendants Does 1-5 are residents of California. Defendants Does 1-5 are or were Correctional Officers, Sergeants, or Lieutenants at California State Prison, Los Angeles County. As Correctional Officers, Defendants Does 1-5 are responsible for supervising, escorting, grading, and searching prisoners, reporting irregular or suspicious occurrences and taking or recommending appropriate action, following proper procedure regarding PREA and other such grievances, running to the scene of a disturbance or emergency, and disarming, subduing and/or restraining prisoners. Defendants Does 1-5 are sued here in their individual capacities for damages based on actions, inaction, or conduct taken or performed under the color of state law.

17. Plaintiff reserves the right, consistent with applicable rules and orders, to amend this complaint to include other officials and parties as legally necessary.

### III. JURISDICTION

18. This Court has jurisdiction over the claims pursuant to 42 U.S.C. Sections 1331 and 1343(a)(3).

19. Venue is appropriate in this judicial district pursuant to 28 U.S.C. Section 1391(b)(2). The events giving rise to the claims occurred in this District.

20. Plaintiff has exhausted all administrative remedies with respect to the claims herein.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Background

21. Mx. Harmon entered CDCR custody in 2011 and is serving a life sentence with the possibility of parole. They are currently housed at the California Health Care Facility, Stockton. Mx. Harmon was under the care of California State Prison, Los Angeles County ("CSP-LAC") from January 18, 2018 to March 30, 2018, and was under CSP-LAC care when they were brutally assaulted by their then-cellmate, Mike Hemmingway ("Mr. Hemmingway"). For the duration of their imprisonment, Mx. Harmon has been housed on Sensitive Needs Yards ("SNY").[3] The decision to house Mx. Harmon with Mr. Hemmingway, who was designated as General Population, would never have happened under previous SNY policy, but was made possible under CDCR's new Non-Designated Programming. Mr. Hemmingway should never have been placed and then left in a cell with Mx. Harmon.

### B. CSP-LAC Officials Knowingly and Deliberately Placed Mx. Harmon in Danger and Refused to Protect Them Despite Repeated Threats and Pleas for Help

22. Immediately following Mr. Hemmingway's placement into Mx. Harmon's cell, Mr. Hemmingway informed Mx. Harmon that he had previously "choked out" and drugged people with whom he was housed. Based on this history, Mr. Hemmingway should not have been placed in a cell with Mx. Harmon, and Mx. Harmon contested their placement with Mr. Hemmingway upon learning of this history. They informed the correctional officer on duty that they feared being housed with another person, particularly a person from the General Population, given their SNY status and their gender identity. In response, the officer told Mx. Harmon that there was no more separation between SNY and the General Population and that he did not want "snitches and child molesters [in the unit] anyway," incorrectly assuming Mx. Harmon to be guilty of one of those offenses.[4]

23. Soon after Mr. Hemmingway's placement with Mx. Harmon, Mr. Hemmingway began to

---

[3] Sensitive Needs Yards were created in the 1990s to separate individuals in custody deemed vulnerable by CDCR. Those not designated as SNY are referred to as "General Population." Since the creation of SNY, individuals designated as SNY and those designated as GP have been kept entirely separate from one another. In 2018, CDCR made the decision to end the process of separating the two and began the process of "re-integrating" the two previously separated populations and housing them on "Non-Designated Yards."

[4] This same officer took and destroyed Mx. Harmon's Tort Claim paperwork regarding this incident.

make comments about Mx. Harmon's gender identity.  Mr. Hemmingway told Mx. Harmon that because they are a "fag" they should give Mr. Hemmingway sexual favors.  Mr. Hemmingway's treatment of Mx. Harmon became more and more hostile as Mx. Harmon refused to engage with Mr. Hemmingway and Mr. Hemmingway observed Mx. Harmon's gender-nonconformity.  Mr. Hemmingway repeatedly threatened Mx. Harmon and used derogatory language toward them.

24. On February 1, 2018, becoming more and more agitated with Mx. Harmon's presence, Mr. Hemmingway wrote a threat on a Form-22 and handed it to the D4 Housing Unit Officer, Defendant Vaughn.  The note stated that Mr. Hemmingway would rape Mx. Harmon if he was forced to house with them any longer: "I was single cell for 7 years when I was here. You took all my meds and my single cell. **Now you got this bitch in my cell whose turning into a girl. Put me by myself or I'm gonna fuck him [sic] with his [sic] cane**." (Emphasis added.)  Defendant Vaughn reviewed the note, laughed, and told Mr. Hemmingway that he should go back to his cell and "handle it."  Defendant Vaughn went on to say that no one would care what happens to Mx. Harmon because they are SNY and that he did not have time for "games."

25. On February 2, 2018, Mx. Harmon, fearing for their safety, submitted an emergency appeal detailing Mr. Hemmingway's threats and asking to be moved away from Mr. Hemmingway.  Mx. Harmon's urgent plea for protection was incorrectly treated as a staff complaint and was not responded to until February 13, 2018, over ten days after their emergency request for transfer.

26. Mr. Hemmingway continued to threaten and attempt to coerce Mx. Harmon following Defendant Vaughn's inaction, with direct threats to assault them and verbalization of his fury at being forced to house with a gender-nonconforming person.

27. On February 4, 2018, Mr. Hemmingway wrote another threat to rape Mx. Harmon on a Form 22.  The form stated specifically that Mr. Hemmingway would "fuck" Mx. Harmon if they were not moved from the joint cell: "I don't have any pain or psyche meds. **I got a weird ass celly I'm gonna fuck with a cane**." (Emphasis added.)  Mx. Harmon saw Mr. Hemmingway hand the note to Defendant Bridgeport.  Rather than respond, Defendant Bridgeport read the threat, laughed, and told Mr. Hemmingway that he "knew what to do."  Defendant Bridgeport added that the two populations were going to have to find a way to live together and quit "making things up" to separate.

28. Following this interaction, Mx. Harmon took the written threat from their cell while Mr. Hemmingway was sleeping and, on February 5, 2018, gave their mental health clinician, James Kaufman, the note and reported their concerns for their safety. Dr. Kaufman noted Mx. Harmon's fear in their medical notes. Dr. Kaufman then delivered Mx. Harmon's plea for safety and the note with the threat on it to an unknown officer in the program office.

29. Later that same day, Defendant Bridgeport and another unknown officer, Defendant Doe 1, came to Mx. Harmon's cell while they and Mr. Hemmingway were present. Defendant Doe 1 told Mr. Hemmingway that his "snitch cellie" had "his" clinician give them a note saying Mr. Hemmingway would "fuck [Mx. Harmon] with a cane." Defendant Doe 1 told Mr. Hemmingway that he was tired of him posturing to get out of being in a cell with Mx. Harmon and that he would have to "put in the work to get him [sic] out." Defendant Bridgeport then followed up by saying she had told Mr. Hemmingway what to do the previous day. Defendants Doe 1 and Bridgeport spoke to Mr. Hemmingway as if Mx. Harmon was not present in the cell. Defendants Doe 1 and Bridgeport increased the potential for harm to come to Mx. Harmon by calling them a snitch to Mr. Hemmingway – a term well known in prison systems to be pejorative and to cause problems for those who are known to snitch. Defendants further encouraged Mr. Hemmingway to harm Mx. Harmon by telling him that he would have to "put in the work" to get Mx. Harmon out of the cell.

**C.  Mx. Harmon was Sexually Assaulted as a Result of CSP-LAC's Refusal to Protect Them**

30. On February 5, 2018, at around 11:00pm, the same day Defendants Doe 1 and Bridgeport encouraged Mr. Hemmingway to harm Mx. Harmon, Mr. Hemmingway forced Mx. Harmon to orally copulate him after Mx. Harmon again refused his advances. Mr. Hemmingway used Mx. Harmon's cane to hold their head toward him during the assault and then bend Mx. Harmon's back backwards causing a disk extrusion in Mx. Harmon's lower back.[5] Mr. Hemmingway also knocked Mx. Harmon's front tooth loose during the assault. Mx. Harmon was treated with a root canal, but the tooth continues to be severely discolored and serves as a reminder of the rape every time they smile.

---

[5] This extrusion appeared on a subsequent MRI.

31. Mx. Harmon later retrieved the condom used during the assault.

**D.  Defendants Perez, Gaffney, Rio, Does 2-5, Lewandowski and Rosales Failed to Follow PREA and Mental Health Crises Protocols, and Subjected Mx. Harmon to Continued Harm and Danger**

32. On February 6, 2018, Mx. Harmon provided written notice to Defendant Associate Warden Lewandowski of the rape they suffered. Following this report, Mx. Harmon underwent a forensic evaluation and DNA evidence was collected. Defendants Perez and Gaffney conducted an initial Prison Rape Elimination Act ("PREA") interview with Mx. Harmon. PREA protocols mandate that information related to charges of sexual assault be kept confidential and on a "need to know basis" within the institution. Contrary to this policy, Defendants Perez and Gaffney provided information to other people in custody regarding Mx. Harmon's assault and subsequent complaint. Additionally, rather than support them, CSP-LAC officials consistently told Mx. Harmon that they would ensure that Mx. Harmon's PREA complaint be found unsubstantiated and accused Mx. Harmon of bringing the assault on themselves. One officer in particular, Defendant Rio, told Mx. Harmon that he would make sure Mx. Harmon was branded a liar for making their PREA complaint in order to mitigate any claims of wrongdoing against staff.

33. PREA protocols also mandate that staff ensure, to the extent possible, that there be no physical or visual contact between the victim and the suspect.[6] CSP-LAC officials, Defendants Does 2-5, stripped Mx. Harmon in front of other people in custody and placed Mx. Harmon in Administrative Segregation ("ASU") in a holding cage next to their attacker.

34. When Mx. Harmon entered ASU, the escorting officer, Defendant Doe 2, pointed at Mx. Harmon and said loudly to the other individuals in custody that Mx. Harmon had "sucked his [sic] celly's dick and told on him."[7] Mx. Harmon was then stripped naked. During the search, Mx. Harmon could hear other individuals in custody whistling and yelling – an experience that exacerbated their trauma following the assault they suffered. Defendant Doe 2 and another officer, Defendant Doe 3, then refused to give Mx. Harmon proper clothes based on their allegiance to their fellow officers, whom Mx. Harmon named in their PREA complaint for failing to protect them.

35. Mr. Hemmingway was also escorted into ASU while Mx. Harmon was still naked. Mr.

---

[6] *See* CDCR Operations Manual Article 44, section 54040.1

[7] Upon information and belief, Officer Doe 2's last name is Ramirez.

Hemmingway's transporting officer asked the Sergeant on duty, Defendant Doe 4, where Mr. Hemmingway should be placed. In response, Defendant Doe 4 said that Mr. Hemmingway should be put in the cage with his "bitch" again so that they could "fuck one more time." Mr. Hemmingway was then placed next to Mx. Harmon and loudly threatened them and then offered money as a reward to anyone who attacked Mx. Harmon while the officers in ASU refused to intervene. After Mr. Hemmingway was allowed to make his threats, the officer in the control booth, Defendant Doe 5, repeated Mr. Hemmingway's offer of a reward to anyone who attacked Mx. Harmon and then proceeded to demand that those in ASU quiet down. Because of their placement next to their attacker, Mr. Hemmingway was able to speak to Mx. Harmon clearly through the vent in their cages and continued to threaten and harass Mx. Harmon.

36. On March 22, 2018, Mx. Harmon appeared before the Institutional Classification Committee, headed by Defendant Lewandowski. During the hearing, Defendant Lewandowski accused Mx. Harmon of inventing the rape they suffered, despite there being DNA evidence and their claim still under investigation. Defendant Lewandowski then informed Mx. Harmon that they would be removed from Administrative Segregation and placed on a yard where Mx. Harmon had voiced enemy and safety concerns. Rather than heed those concerns, Defendant Lewandowski threatened Mx. Harmon if they refused the order to move to the yard assigned. Upon information and belief, later that same day, Mx. Harmon's mental health clinician provided notice to the Committee and Defendant Lewandowski of Mx. Harmon's safety concerns. Those concerns were ignored by Defendant Lewandowski and put Mx. Harmon directly at risk.

37. On March 26, 2018, over the clear concerns from Mx. Harmon, Defendant Rosales, responsible for Administrative Segregation, informed Mx. Harmon that they would be transferred to the yard where Mx. Harmon had expressed safety concerns. Mx. Harmon informed Defendant Rosales that they could not move to that yard and expressed their thoughts of imminent suicide if they were indeed forced to move. Mx. Harmon made clear that they had a large number of Tylenol pills in their cell they intended to use. Defendant Rosales ignored Mx. Harmon's pleas for help and suicidal ideation and left them in their cell where they had access to weeks' worth of Tylenol. As a direct result of Defendant Lewandowski's decision to move Mx. Harmon to a yard where they faced enemy concerns and Defendant

Rosales's deliberate indifference to their suicidal ideation, Mx. Harmon attempted suicide by overdose of Tylenol on March 26, 2018.

### E. Defendants Hanks and Hernandez Retaliated Against Mx. Harmon for Reporting the Assault

38. Following a second attempted suicide, Mx. Harmon was scheduled to be transferred to the Mental Health Crisis Bed at the California Men's Colony on March 30, 2018. During the transfer, Mx. Harmon was attacked by Defendants Hanks and Hernandez and subsequently given a retaliatory Rules Violation Report related to the incident.

39. While being transported, Mx. Harmon was placed in a full safety smock, which resulted in their legs being shackled and their hands tied to their waist restraints. Without warning, Defendant Hanks sprayed Mx. Harmon with pepper spray directly in their facial area, and then proceeded to throw Mx. Harmon on the ground.

40. While in the shower for decontamination, Defendant Hernandez asked Mx. Harmon how their eyes felt and called them a "fag." He went on to say that the abuse they received is what happens to people who file PREA complaints at Lancaster.[8]

41. Defendants then accused Mx. Harmon of resisting transfer and battery on an officer, which resulted in an 18-month disciplinary segregation finding. Mx. Harmon was not provided a hearing related to these charges, in violation of their rights.

### F. Mx. Harmon Severely Decompensated Following the Attack and Subsequent Failures by CDCR Officials

42. Mx. Harmon's attempted suicide on March 26, 2018, which resulted from their debilitating trauma and fear of moving to yet another yard where they would be at risk, was the first of a number of suicide attempts over the following two year period.

43. On March 30, 2018, Mx. Harmon received notice that their PREA complaint had been found unsubstantiated. The finding of this result, despite the results of the forensic exam and DNA results still under review, pushed Mx. Harmon again to a place of despair. They attempted suicide for a second time. Mx. Harmon continued and continues to have flashbacks and symptoms of PTSD because of this incident, made worse by CDCR's flagrant failure to thoroughly investigate and take seriously their

---

[8] CSP-LAC is located in Lancaster, and is often referred to as Lancaster Prison.

complaints of sexual assault and subsequent retaliation and failure to protect.

44.     This deterioration of Mx. Harmon's mental health was further exacerbated by their medical and mental health professionals who continued to prescribe them Tylenol as "Keep on person," rather than "Nurse Administered," or "Directly Observed Therapy," even during their multiple stays in crisis beds for suicidal ideation.[9]

45.     Mx. Harmon continues to have a five-hundred-dollar bounty placed on them by Mr. Hemmingway that was subsequently encouraged by Defendant Doe 5. They have been threatened with violence at multiple institutions by incarcerated people seeking to recover on that bounty, leading Mx. Harmon to be placed in administrative segregation, where they are currently housed, for their own safety.

46.     Mx. Harmon attempted suicide on nine separate occasions, directly stemming from the trauma they suffered due to Defendants' failure to protect, retaliation for reporting they had been sexually assaulted, and subsequent deliberate indifference to their medical needs as a result of the sexual trauma and ongoing threats to their safety. Mx. Harmon suffers life-long physical and emotional damage resulting from Defendants' actions and inactions.

### V.     CAUSES OF ACTION

### COUNT I

**Failure to Protect**
**Eighth Amendment, 42 U.S.C. § 1983**
**(Against Defendants Vaughn, Bridgeport, Lewandowski and Does 1-5)**

47.     Plaintiff repeats and re-alleges the allegations of all the preceding paragraphs as if fully set forth herein.

48.     Defendants Vaughn, Bridgeport, and Doe 1 – acting in their individual capacities and under the color of state law – were deliberately indifferent to Plaintiff's serious safety concerns related to their cellmate, Hemmingway.

49.     Defendants Vaughn, Bridgeport, and Doe 1 were each individually provided written or verbal notice of Plaintiff's cellmate's threats of violence against Plaintiff. Defendants failed to take any

---

[9] California Code of Regulations Title 15 section 3999.315 provides that medication shall be ordered as Keep on Person (KOP), unless the prescriber specifically orders Nurse Administered (NA) or Directly Observed Therapy (DOT)… under section (d)(5): NA is required for patients who cannot safely or properly self-administer medications.

reasonable measures to address Plaintiff's serious safety concern, and instead encouraged such harm, resulting in severe bodily harm to Plaintiff.

50. Defendants Lewandowski and Does 2-5 – acting in their individual capacities and under the color of state law – were deliberately indifferent to Plaintiff's serious safety concerns following the sexual assault they suffered.

51. Defendant Lewandowski was aware of Mx. Harmon's safety concerns and refused to respond to them by placing them on a yard at which they did not have safety concerns, resulting in severe bodily harm to Plaintiff.

52. Defendants Does 2-5 were aware that Mx. Harmon had been raped by their cellmate and failed to provide them a safe housing option following that assault. Instead, they stripped and humiliated Mx. Harmon, publicly shamed and condemned them, and placed Mx. Harmon in a cell next to their attacker, where their attacker was able to further harm and threaten them.

53. By failing to protect Plaintiff from their cellmate that threatened them, Defendants Vaughn, Bridgeport, Lewandowski, and Does 1-5 have deprived Plaintiff of their right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment to the United States Constitution.

54. As a direct and legal result of Defendant Vaughn's, Bridgeport's, Lewandowski's and Does 1-5's actions and/or omissions and/or in ratifying such acts or omissions, Plaintiff has suffered and continues to suffer damages, including, without limitation, physical injury; pain and suffering; emotional, psychological, and physical distress; violation of dignity; and other pecuniary losses not yet ascertained.

## COUNT II

**Retaliation for Filing Grievances**
**First Amendment, 42 U.S.C. § 1983**
**(Against Defendants Lewandowski, Gaffney, Perez, Rio, Does 2-5, Hanks and Hernandez collectively the "Count II Defendants")**

55. Plaintiff repeats and re-alleges the allegations of all the preceding paragraphs as if fully set forth herein.

56. The Count II Defendants – acting in their own individual capacity and under the color of state law – have retaliated against Plaintiff for filing grievances.

57. Following their report of rape, Defendant Lewandowski threatened and planned to send

COMPLAINT                                                                                                                    13

Mx. Harmon to a yard where they had stated enemy concerns to punish them for filing a PREA grievance.

58. Following Mx. Harmon's report of rape, and contrary to CDCR policy, Defendants Perez and Gaffney provided information to other people in custody regarding Mx. Harmon's assault and subsequent complaint. Additionally, rather than support them, Defendants Perez and Gaffney consistently told Mx. Harmon that they would ensure that Mx. Harmon's PREA complaint be found unsubstantiated and accused Mx. Harmon of bringing the assault on themselves.

59. Following Mx. Harmon's sexual assault, Defendant Rio told Mx. Harmon that he would make sure Mx. Harmon was branded a liar for making their PREA complaint in order to mitigate any claims of wrongdoing against staff.

60. Following Mx. Harmon's sexual assault, Does 2-5 placed Mx. Harmon in a cage next to their attacker and made threatening verbal comments to Mx. Harmon for reporting the sexual assault, encouraged Mx. Harmon's attacker to assault them again, and incited other people in the administrative unit to target Mx. Harmon for reporting the sexual assault by Mr. Hemmingway.

61. Following their report of rape and subsequent grievances, Defendants Hanks and Hernandez physically threw Plaintiff to the floor during a transfer and sprayed them in the face with pepper spray without warning. Following this assault, Defendant Hernandez informed Mx. Harmon that their treatment was a result of them filing a PREA grievance.

62. By retaliating against Plaintiff for filing grievances, the Count II Defendants have deprived Plaintiff of their right to freedom of speech, guaranteed by the First Amendment to the United States Constitution.

63. As a direct and legal result of the Count II Defendants' actions, Plaintiff has suffered and continues to suffer damages including, without limitation, physical injury; pain and suffering; emotional, psychological, and physical distress; violation of dignity; and other pecuniary losses not yet ascertained.

64. By engaging in the aforementioned acts, the Count II Defendants engaged in willful, malicious, intentional, and/or oppressive conduct, and/or acted with willful and conscious disregard of the rights, welfare, and safety of Plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

# COUNT III
### Failure to Provide Necessary Medical Treatment
### Eighth Amendment, 42 U.S.C. § 1983
### (Against Defendant Rosales)

65. Plaintiff repeats and re-alleges the allegations in all preceding paragraphs as if fully set forth herein.

66. Plaintiff expressed concerns for their safety and thoughts of suicide to Defendant Rosales.

67. Defendant was responsible for ensuring Plaintiff was given access to immediate mental health and medical care given their stated imminent risk of suicide.

68. Defendant Rosales was deliberately indifferent to plaintiff's expression of suicidal ideation and failed to take immediate action to safeguard Plaintiff's safety.

69. Defendant Rosales's deliberate failure to provide access to medically necessary mental health and medical treatment to Plaintiff, caused them unnecessary and wanton infliction of pain and injury and violates the Eighth Amendment of the U.S. Constitution.

70. As a direct and legal result of Defendants Rosales's actions and omissions, Plaintiff has suffered and continues to suffer damages including, without limitation, physical injury; pain and suffering; emotional, psychological, and physical distress; violation of dignity; and other pecuniary losses not yet ascertained.

71. By engaging in the aforementioned acts, Defendant Rosales engaged in willful, malicious, intentional, and/or oppressive conduct, and/or acted with willful and conscious disregard of the rights, welfare, and safety of Plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a. For compensatory, general, and special damages, in an amount to be determined at trial;

b. For punitive damages in an amount to be proven at trial;

        c.      For reasonable attorneys' fees and costs to Plaintiff pursuant to 42 U.S.C. Section 1988; and

        d.      Such other relief as the Court finds appropriate in the interest of justice.

Dated: October 14, 2020                    Respectfully Submitted,

*[signature]*

Kevin Love Hubbard
Jennifer Orthwein
Felicia Medina
MEDINA ORTHWEIN LLP

*Attorneys for Plaintiff Jason Harmon*